Roger W. **RICH**, Plaintiff,

v.

**SECRETARY OF THE ARMY, et al., Defendants.**

Civ. A. No. 78–M–43.

United States District Court, District of Colorado.

June 15, 1981.

William Reynard, Reynard & Booms, P. C., Denver, Colo., for plaintiff.

Calvin M. Lederer, Captain, JAGC, Litigation Division, Dept. of the Army, Washington, D. C., Nancy E. Rice, Asst. U. S. Atty., Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

MATSCH, District Judge.

Roger W. Rich enlisted in the United States Army on February 15, 1968, and

served on active duty until February 8, 1971 when he was transferred to the United States Army Reserve from which he was honorably discharged on February 1, 1974. During his tour of active service, the plaintiff was assigned in West Germany where he met and fell in love with a woman from Turkey. After denial of a request for permission to marry, they went through a civil ceremony in Turkey. A son was born to this couple in 1970. When Mr. Rich returned to the United States in 1971, his wife refused to come with him because of her previous experience in this country as the wife of a serviceman.

Upon release from active service, Mr. Rich worked as a hospital orderly and then took training in practical nursing and was licensed as a practical nurse in the state of Michigan. While working in a Detroit hospital in March, 1976, Mr. Rich was informed that his wife and son had been killed in an automobile accident in Western Europe.

On August 13, 1976, the plaintiff made application for a second enlistment in the United States Army. As part of that process, he completed a standard form of questionnaire in which he gave a negative answer to the question, "Have you ever engaged in homosexual activity (sexual relations with another person of the same sex)?" On August 16, 1976, Mr. Rich underwent a medical examination as part of the enlistment procedure and, pursuant to instructions, he wrote on a medical questionnaire form, "denies drug abuse, alcoholism, homosexuality." Mr. Rich entered on active duty on August 24, 1976. He was first assigned to an abbreviated basic training course and then went to Fort Sam Houston, Texas where he was trained as a medical specialist. During that training period in October, 1976, he was solicited by a male homosexual at an NCO club and discussed homosexuality with that person. That experience started him thinking about his sexual identity and he read extensively about homosexuality.

Mr. Rich was assigned to Fitzsimmons Army Medical Center and experienced health problems arising from his emotional conflict. During a hospitalization for gastrointestinal illness on March 4, 1977, the plaintiff sent for his first sergeant, Shirley Nichols, and told her that he had a problem involving his illness; that he was "gay"; and that he was going to be discharged involuntarily.

Sgt. Nichols had a counselling session with Mr. Rich on March 14, 1977, and at that time the plaintiff told her that he had been a homosexual for a number of years; that he had told this to his mother; that he had no desire to change; and that the "gay" side of his life was totally separate from his military life. The sergeant cautioned Mr. Rich that anything he said could be used against him and that the question of his being discharged was under active review.

On April 29, 1977, Lt. Col. Betty Whitmire, the surgical nursing supervisor on the ward to which Mr. Rich was assigned, was approached by him at a nursing station and at that time Mr. Rich said that he was homosexual and that he would resist any effort by the Army to discharge him. Col. Whitmire directed the wardmaster, Sfc. Hall, to counsel Mr. Rich.

On May 11, 1977, Col. Margaret Phillips, the Chief of the Department of Nursing, wrote to request the company commander of Mr. Rich's company that he be released from duty in the Department of Nursing, effective May 12, 1977, pending his separation from active duty for admitted homosexuality.

The company commander, Capt. Hanke, who had been recently assigned to that position, made a recommendation to the commanding officer of Fitzsimmons Army Medical Center, General Dirks, on May 24, 1977 that the plaintiff be discharged for unsuitability under Chapter 13, AR 635–200. Under the procedure established by that regulation, if the commander does not disapprove a recommendation for separation for unsuitability, he must convene a board of officers to hear and determine the question.

The Chapter 13 procedure also includes a mental status evaluation. Accordingly, a

psychiatric evaluation was requested and on May 27, 1977, a psychiatrist interviewed the plaintiff, who refused to answer any potentially incriminating questions on the advice of his civilian attorney. Mr. Rich did say that he was "gay" and was in disagreement with the Army policy of discharging homosexuals. The psychiatrist concluded that there was no evidence of mental illness and no disqualifying mental defects sufficient to warrant disposition through medical channels. The diagnosis was "homosexuality, by history" and the psychiatrist was of the opinion that Mr. Rich was subject to separation on the basis of unsuitability.

On May 27, 1977, General Dirks wrote to the company commander, acknowledging receipt of his recommendation of discharge for unsuitability and suggesting consideration of the applicability of the provisions of Chapter 14, AR 635–200, governing discharge for misconduct-fraudulent entry. The Army regulations in that chapter authorize the involuntary discharge of enlisted personnel for fraudulent entry, which is defined as follows:

> Fraudulent entry is the procurement of an enlistment, induction, or period of active service through any deliberate material misrepresentation, omission, or concealment which, if known, might have resulted in rejection. Any incident which meets the foregoing may be cause for discharge for fraudulent entry. (Exhibit V).

The procedure for discharge for fraudulent entry under Chapter 14 begins with action initiated by the unit commander forwarding a military letter to the commander who has general court-martial jurisdiction. In this case, that was General Dirks. The regulation requires that commanding officer to determine whether the fact of fraudulent entry has been completely verified and proven. If further substantiating facts and evidence are required, they must be obtained. If the fraudulent entry is verified, the officer with general court-martial authority may then direct issuance of an honorable discharge or order that a board of officers be convened to determine whether the individual should be discharged. The commander may also direct retention if the individual entered service with a waivable disqualification.

On June 2, 1977, the unit commander issued a formal notification to Mr. Rich that he was being considered for discharge for fraudulent enlistment under Paragraph 14–5g of Chapter 14, AR 635–200. The appropriate information was given to the plaintiff and he was assigned military counsel for his consultation. The plaintiff was also advised that he had three working days within which to submit a statement or other evidence for consideration by the commander of the medical center.

In the recommendation that Roger Rich be considered for discharge under Chapter 14, Capt. Hanke asserted that Mr. Rich deliberately concealed the fact that he was a homosexual at the time of his second enlistment by making false statements on official documents. The company commander referred to the statements to Sgt. Nichols on March 14, 1977 as evidence that Mr. Rich was a homosexual at the time of his entry to service. It was, however, the company commander's recommendation that Mr. Rich be allowed to remain on active duty because of his "job performance and maturity."

On June 6, 1977, the civilian attorney, who is counsel for Mr. Rich in this civil action, wrote to General Dirks, acknowledging that Mr. Rich had received notice of the Chapter 14 proceedings and requesting an extension of time to respond to and including July 7, 1977. As grounds for that request, it was noted that elimination proceedings under Chapter 13 had begun on May 19, 1977 and that the new proceedings were initiated on June 2, 1977, but that notice of them was not served on Mr. Rich until June 6. It was also observed that the notice included thirteen enclosures, some of which were to be disputed. General Dirks replied to this request by a letter to the plaintiff's counsel, dated June 7, 1977, advising that all proceedings under Chapter 13 had been halted and that the time to respond to the proposed discharge action

under Chapter 14 was extended to June 15, 1977.

The formal response, dated June 13, 1977 was signed, under oath, by Roger W. Rich and the six-page document also bore the signature of plaintiff's counsel. In the response it was contended that the proceedings under Chapter 14 were improper because Paragraph 14–5 required *deliberate* misrepresentation or concealment and that it was not until after the enlistment that Mr. Rich's self-identification crystallized to such a degree that he could say that his sexual orientation was homosexual. In explanation of that statement, the sworn statement included this paragraph:

a) Enclosure No. 1 submitted you does bear the words printed by me "denies drug abuse, alcoholism, homosexuality". These words were copied from a blackboard pursuant to the instructions of the recruiting officer. *My earlier experience had been heterosexual followed by isolated episodes with my own sex.* I had not reached a clear self realization that my sexual orientation was predominately homosexual. I did not make the entries with any deliberate attempt to conceal my "homosexuality" simply because I did not consider myself to be a "homosexual" as defined by the Army. (Exhibit T). (Emphasis added).

The response also included comments on enclosures attached to the unit commander's notice and after reference to the relationship with the Turkish woman, and the internal conflicts producing physical symptoms, the following summary was included:

5. *Summary*: It is my position that these proceedings have been improperly initiated under Chapter 14, AR 635–200, paragraph 14–5g for fraudulent enlistment. The entire case is based upon the interpretation of Sergeant Nichols of my remarks to her on March 14, 1977 in which she states that I had told her that I had been "homosexual for a number of years". I did tell her that I had been "gay" meaning that I had been of undetermined sexual orientation for some time. The clinical history cited above

does not establish a clear pattern of homosexual orientation prior to my reenlistment. Chapter 14, Sub-Section 12, requires the Commander exercising general court-martial jurisdiction to determine whether the fact of fraudulent entry *has been completely verified and proven.* I submit that in light of the whole record presented to you that there are insufficient facts to completely verify the proposition of intentional fraudulent entry. As mentioned above, there is a serious question of whether or not the withholding of information about a medical condition is the proper basis for a Chapter 14 separation. (Exhibit T).

A supplemental response, dated June 14, 1977, was sent to General Dirks by plaintiff's counsel. In that letter it was asserted that to apply the Chapter 14 regulation to Mr. Rich and discharge him for his sexual preferences without proof of specific overt homosexuality at the time of the enlistment would be violative of rights recognized by the United States Constitution.

On June 15, 1977, General Dirks directed the discharge of Roger W. Rich under the provisions of Chapter 14, AR 635–200 and the issuance of an Honorable Discharge Certificate.

Department of Defense Directive 1332.14 (Exhibit HH) establishes the policy that the Armed Forces have the right and the duty to separate from service those members who demonstrate that they are unqualified for retention. The Directive incorporates reasons for separation which include "unsuitability" because of "homosexual or other aberrant sexual tendencies." A separation for "unsuitability" is with an honorable or a general discharge as warranted by the member's military record. Also among the reasons for separation incorporated in the Directive are "misconduct" as evidenced by "sexual perversion" including "homosexual acts" and "procurement of a fraudulent enlistment." A separation for "misconduct" is to be "under other than honorable conditions" unless the particular circumstances in a given case warrant a general or an honorable discharge.

The Army Regulations involved in this case are consistent with the Department of Defense Directive 1332.14. Paragraph 14–33a, (3) AR 635–200 defines homosexual acts for purposes of a misconduct separation in the following language:

(3) Homosexual acts. Homosexual acts are bodily contact between persons of the same sex, actively undertaken or passively permitted by either or both, with the intent of obtaining or giving sexual gratification, or any proposal, solicitation, or attempt to perform such an act. Members who have been involved in homosexual acts in an apparently isolated episode, stemming solely from immaturity, curiosity, or intoxication normally will not be processed for discharge because of homosexual acts. However, if other conduct is involved, members may be considered for discharge for other reasons set forth in this regulation. (Exhibit GG).

Chapter 13 of AR 635–200 establishes the policy and procedure for eliminating enlisted personnel found to be "unsuitable" and a member is subject to separation for unsuitability for homosexuality defined as follows in Paragraph 13–2d:

Policy with respect to homosexuality. It is HQDA policy that homosexuality is incompatible with military service. A person with homosexual tendencies seriously impairs discipline, good order, morale, and security of a military unit. Accordingly, when conditions exist which would support action under paragraph 13–4d, the member will be processed for discharge. (Exhibit FF).

Paragraph 13–4d reads as follows:

Homosexuality (homosexual tendencies, desires, or interest but without overt homosexual acts). Applicable to personnel who have not engaged in a homosexual act during military service, but who have a verified record of preservice homosexual acts. It is also applicable to other cases which do not fall within the purview of paragraph 14–33a(3). (See para. 1–30c(1)(c).) (Exhibit FF).

In addition to these regulations providing for separation of Army personnel for misconduct and unsuitability, the Army has established non-waivable moral and administrative disqualifications for applicants for enlistment including the following in Appendix A, AR 601–210:

Questionable moral character, alcoholism, drug dependence, sexual perversion, history of anti-social behavior, history of frequent or chronic venereal disease. (Exhibit AA).

It is that disqualification which is the justification for requiring applicants to deny homosexuality and homosexual acts in the forms which are part of the application process.

The policy of excluding homosexuals from the United States Army is the product of a perception that homosexuality is not compatible with military service. Subjective support for that view was provided by the testimony of General Lutz, a policymaker with extensive experience as a military officer, including the position of Director of Human Resource Development for the Department of the Army.

■ The plaintiff has made a general challenge to this exclusory policy as being arbitrary, unreasonable and unconstitutional. It is necessary to consider these contentions in this case because there can be a separation for misconduct by fraudulent entry only if the misrepresentation has been of a *material* matter which, if known, might have resulted in rejection of the applicant. That is the express requirement in Paragraph 14–5 of Chapter 14, AR 635–200. Thus, if the Army cannot validly exclude homosexuals by denying their applications for enlistment or by separating them from service, any misrepresentations as to homosexuality would not be material.

■ Similar contentions were made concerning comparable regulations of the United States Navy in *Beller v. Middendorf*, 632 F.2d 788 (9th Cir. 1980) *cert. denied*, —— U.S. ——, 101 S.Ct. ——, 69 L.Ed.2d 405 (1981). In the opinion deciding the cases before the Ninth Circuit Court of Appeals, that court made a careful analysis of the Navy's policy regard-

ing discharge of naval personnel for homosexual acts and held that such persons were not deprived of any property interest without due process of law and that there was no deprivation of a liberty interest where there was an admission that such homosexual acts did occur. The court also considered the contention that there was a denial of substantive due process because the regulations prohibited conduct which was claimed to be protected as an aspect of the fundamental right of privacy. The court concluded that whatever considerations might be given to homosexuality in other contexts, the special circumstances surrounding service in the Armed Forces are controlling, and I am in complete agreement with the analysis made by the Ninth Circuit Court of Appeals. Accordingly, the plaintiff's claims of invalidity of the Army's rules and regulations governing the exclusion of persons for homosexual acts are rejected for the reasons articulated in *Beller v. Middendorf, supra.*

The Ninth Circuit did not deal with the question of separation for "unsuitability" because of "homosexual tendencies" as authorized by Chapter 13 of AR 635–200 or misconduct by fraudulent misrepresentation by a false denial of homosexuality in the application process. It is, therefore, necessary to consider the specific claims of Roger W. Rich as an individual who has been denied the opportunity to pursue a career in the Army.

Mr. Rich claims that there has been a lack of procedural due process in his case because the Army failed to follow its own regulations. The assertions supporting this claim are that separation of members under Paragraph 14–33a, Chapter 14, AR 635–200 requires specific acts and that under Subsection (3) of 14–33a, isolated episodes stemming from immaturity or curiosity are excluded. Thus, it is argued that his denial of engaging in homosexual activity on the questionnaire form must be considered immaterial since the only homosexual acts which he has admitted prior to his second enlistment were episodes of immature experimentation and General Dirks had no proof to the contrary. Additionally, it is asserted that General Dirks did not observe the "completely verified and proven" evidentiary requirement of Paragraph 14–12 in Chapter 14 because he did not make any attempt to establish the state of mind of Mr. Rich when he answered the questionnaire and wrote the denial of homosexuality in the application process.

■ Finally, it is asserted that the Army was required to consider his homosexuality as a "medical defect" the concealment of which could not be considered as a fraudulent entry under Paragraph 14–5(e). That assertion is sophistry. While the Army regulations do indicate that homosexuality can be considered as an indication of a personality disorder for purposes of rejecting an application for appointment, it is not defined anywhere as a "medical defect" within the meaning of this sub-paragraph.

■ The exclusion of homosexuals from service in the United States Army is accomplished by the non-waivable disqualification provision, the personality disorder disqualification, and the regulations providing for separation for misconduct and for unsuitability. The choice made in approaching a particular case is a command decision. Here, the company commander changed his approach from separation for unsuitability under Chapter 13 and went forward with General Dirks' suggestion that Mr. Rich be charged with misconduct for fraudulent enlistment under Chapter 14. The procedure then used in submitting the case to General Dirks was consistent with Army regulations.

■ There is no merit to the contention that General Dirks failed to perform his duty to make certain that the fact of fraudulent enlistment was completely verified and proven. What General Dirks did was to accept the admissions made by Roger W. Rich in his sworn statement of June 13, 1977 in response to the proceedings for his discharge insofar as he admitted the statement of his homosexual identity made in March, 1977 and the statement "my earlier experience had been heterosexual followed by isolated episodes with my own sex."

(Exhibit T). The first recantation of that statement came in the course of a deposition of the plaintiff taken on September 11, 1979 when he explained that the episodes referred to were during childhood. The explanation that there was an inversion of the quoted phrases as a result of a typographical error was first made during the plaintiff's testimony at trial.

General Dirks disbelieved the plaintiff's sworn statement with respect to the absence of any intent to deceive. It is difficult to understand what course could have been taken to attempt to verify the facts under these circumstances. The self-declarations of homosexuality to Sgt. Nichols in March, 1977 appropriately gave rise to an inference that the declarant had committed homosexual acts and the quoted sentence from the June 13, 1977 statement is verification of that inference, although there is the qualification that there were only "isolated episodes." General Dirks was the trier-of-fact in this case and he was never given any indication that these "earlier episodes" were prior to heterosexual experience. Indeed, Mr. Rich had refused to give the interviewing psychiatrist any information about homosexual acts because of the advice of counsel. There is, therefore, substantial evidence to support General Dirks' decision that there was deception in this enlistment process and that in August, 1976, Mr. Rich was a homosexual who had committed homosexual acts.

The plaintiff has claimed that if the Army can discharge him solely on the basis of his own statements of sexual preference and isolated acts without any proof or admission of homosexual conduct near the time of his second enlistment, the result is punishment for status and an infringement of freedoms protected by the U. S. Constitution. The legal question underlying these claims is whether there is a difference between excluding from military service persons who have performed homosexual acts and persons who have merely proclaimed homosexuality. To answer that question it becomes necessary to analyze the significance of statements of the type made by Mr. Rich.

■ A statement that a person is homosexual or gay is different from a statement of gender identification. The latter refers to physical characteristics, but the former relates to conduct. While it must be conceded that a male may feel sexually attracted to another male without engaging in conduct culminating in orgasm, just as a male may feel sexually attracted to a female without copulation, the justifications for the exclusion of homosexuals are applicable regardless of the level of sexual activity involved. The principal reason for the Army's rejection of homosexuals is the belief that societal intolerance will be reflected in peer behavior which will be inimical to the legitimate governmental interests in discipline and morale. While there can be disputes about the provability of that belief, it is not irrational. It is equally applicable to declamations as to deeds.

Accordingly, I conclude that the constitutional analysis of the conflicting individual and governmental interests made in *Beller v. Middendorf, supra,* is applicable in this case even if there is complete acceptance of the plaintiff's position that his statements are not evidence of any relevant homosexual conduct.

■ The most that can be said in this case is that the admissions of the plaintiff were an inadequate basis for finding him guilty of deliberate falsification in his denial of homosexuality and homosexual conduct in the enlistment process. Would that be a basis for any relief which could be granted within the jurisdiction of this court? I think not. Certainly reinstatement could not be ordered because it is clear that given my view of the validity of the Army's exclusory regulations, Mr. Rich would be subject to separation immediately under Chapter 13, AR 635–200. Additionally, there is no basis for damages because there is no harm if the only error is the use of Chapter 14 rather than Chapter 13 in ordering an honorable discharge of the plaintiff. It is true that under Chapter 13, the question of discharge would have been determined by a board of officers, but that

lost opportunity has no practical significance in this lawsuit. There is no basis for a belief that the result would have been different if the issue of separation or retention of Mr. Rich had been made by a board rather than General Dirks, and that would have been the sole issue since the plaintiff was clearly "unsuitable" within the policy statement in Paragraph 13–2d, quoted above. Moreover, General Lutz testified that he was not aware of a single case in which the decision made was to retain discovered homosexuals. There is no evidence to the contrary.

If there is a recognized wrong here, it is the entry on the records of "fraudulent enlistment" as the reason for separation. At trial it was shown that this record has been in the files of the Colorado Employment Office, but there is no evidence that the Army was at fault in providing the information to that office.

▪ The initial response to the plaintiff's complaint in this case was a motion to dismiss for lack of jurisdiction for the failure to exhaust the available administrative remedy. Specifically, Mr. Rich had not sought review of his discharge by applying to the Army Board for Correction of Military Records (ABCMR), pursuant to 10 U.S.C. § 1552. I denied that motion because the claims made were broader than could be expected to be considered by the ABCMR. Having now disposed of those broader claims, the question of jurisdiction should again be considered. To the extent that there is now remaining any contention that there was an administrative error made by proceeding under Chapter 14 rather than Chapter 13 of AR 635–200, it must be concluded that the procedure for correction of such an error was by an application to the ABCMR and the failure to file such an application deprives this court of jurisdiction to consider that allegation as a discrete claim for relief. *Hodges v. Callaway*, 499 F.2d 417 (5th Cir. 1974).

Upon the foregoing as the findings of fact and conclusions of law herein, it is

ORDERED that all of the plaintiff's claims for relief are dismissed and that the Clerk shall enter judgment in favor of the defendants with costs to be taxed upon the filing of a Bill of Costs within ten (10) days.