Roger W. RICH, Plaintiff-Appellant,

v.

SECRETARY OF THE ARMY, Major General Kenneth R. Dirks, M.D., Former Commander; Philip A. Deffer, M.D., Brigadier General, Defendants-Appellees.

No. 81–1795.

United States Court of Appeals, Tenth Circuit.

June 1, 1984.

William F. Reynard, American Civil Liberties Union Foundation of Colorado, Inc., Denver, Colo. (Robert Tabor Booms, American Civil Liberties Union Foundation of Colorado, Inc., Denver, Colo., was also on brief), for plaintiff-appellant.

Richard D. Rosen, Captain, JAGC, Dept. of the Army, Washington, D.C. (Arnold I. Melnick, Colonel, JAGC, and M. Scott Magers, Lieutenant Colonel, JAGC, Dept. of the Army, Washington, D.C., of counsel and were also on brief), for defendants-appellees.

Before SETH, Chief Judge, and BREITENSTEIN and HOLLOWAY, Circuit Judges.

HOLLOWAY, Circuit Judge.

In this suit the plaintiff, an army medical specialist, challenges his involuntary discharge from the Army. The Army honorably discharged plaintiff for fraudulent enlistment when it was learned that, in the enlistment process, he falsely represented that he was not a homosexual. The district court upheld the Army's action. *Rich v. Secretary of the Army*, 516 F.Supp. 621. Plaintiff appeals.

I

THE FACTUAL BACKGROUND

Plaintiff enlisted in the Army on February 15, 1968. While on active duty in Europe, he married a woman from Turkey, and she bore him a son. When he returned to the United States, his family did not accompany him. At the end of his active

duty in February 1971, he was transferred to the Army Reserves from which he was honorably discharged on February 1, 1974.

After release from active duty plaintiff became licensed as a practical nurse. In August of 1976, several months after receiving the tragic news that his wife and son were killed in an automobile accident in Western Europe, plaintiff applied for a second enlistment in the Army.

As part of the reenlistment process plaintiff responded in the negative to the question, "[h]ave you ever engaged in homosexual activity (sexual relations with another person of the same sex)?" Exhibit C at 113. Following a standard enlistment medical examination, pursuant to instructions, plaintiff wrote on a questionaire form, "denies drug abuse, alcoholism, homosexuality." Defendants' Exhibit B.

In late August 1976 plaintiff went on active duty. After assignment to Fitzsimmons Army Medical Center, an emotional crisis stemming from confusion regarding his sexual identity produced health problems. On March 4, while plaintiff was hospitalized for a gastrointestinal illness, he told his first sergeant, Shirley Nichols, that he was "gay" and that he was to be involuntarily discharged. On March 14, 1977, plaintiff had a counseling session with Sergeant Nichols. He "told her that he had been a homosexual for a number of years; that he had told this to his mother; that he had no desire to change; and that the 'gay' side of his life was totally separate from his military life." 516 F.Supp. at 623; Defendants' Exhibit D. On April 29, plaintiff approached his surgical nursing supervisor, Lt. Col. Betty Whitmire, and announced to her in the presence of patients and staff, that he was homosexual, and would resist efforts to discharge him. Defendants' Exhibit M (sworn statement of Betty Whitmire); Defendants' Exhibit J, at 3 (letter of SFC. Hall, wardmaster).

In late May, word of the foregoing events reached General Dirks—the commanding officer of Fitzsimmons Army Medical Center. General Dirks received a recommendation that plaintiff be dis-

charged for unsuitability under Chapter 13. Army Reg. 635–200 ch. 13. In addition to a hearing the Chapter 13 proceedings required a mental status evaluation. Plaintiff admitted that he was "gay" to the psychiatrist, but he said that he disagreed with the Army policy of discharging homosexuals. The psychiatrist diagnosed "homosexuality by history," and recommended that plaintiff be discharged for unsuitability.

On May 27, 1977 General Dirks wrote the company commander explaining the psychiatrist's recommendation and suggesting that plaintiff be discharged under Chapter 14, Army Reg. 635–200 ch. 14 (1973), rather than Chapter 13. Chapter 14 permits dismissal for fraudulent entry which is defined as the procurement of entry "through any deliberate material misrepresentation, omission, or concealment which if known, might have resulted in rejection." Defendants' Exhibit V; Army Reg. 635–200 ch. 14 ¶ 14–5 (1973).

The Army chose to discontinue Chapter 13 proceedings and pursue the matter under Chapter 14. In an effort to demonstrate that there was no deliberate misrepresentation or concealment, plaintiff argued that his sexual identity did not crystallize until after enlistment. Because his earlier admissions appeared inconsistent with this position, plaintiff submitted a sworn statement in which he said: "My earlier experience had been heterosexual followed by isolated episodes with my own sex." Defendants' Exhibit T. In this statement, plaintiff admitted that he had told Sergeant Nichols that he was "gay," but he sought to explain this by asserting that he meant to convey that he was not a practicing homosexual, but "had been of undetermined sexual orientation for some time." *Rich, supra*, 516 F.Supp. at 625; Defendants' Exhibit T. On June 15, 1977, General Dirks directed that plaintiff be honorably discharged under Chapter 14 because he had fraudulently denied homosexuality in the enlistment process.

Plaintiff brought suit seeking damages and injunctive and declaratory relief. Af-

ter a three-day trial, the district court entered judgment for the defendants. The trial judge made some alternative findings and conclusions in dealing with the factual disputes about the fraudulent enlistment issue. He first found that "[t]here is, therefore, substantial evidence to support General Dirks' decision that there was deception in this enlistment process and that in August, 1976, Mr. Rich was a homosexual who had committed homosexual acts." 516 F.Supp. at 628. The judge also, however, discussed plaintiff's argument that his discharge on the basis of his statements of sexual preference, without proof of homosexual conduct near the time of his second enlistment, was punishment for status. The judge reasoned that the justifications for exclusion of homosexuals apply regardless of the level of sexual activity involved; that the Army's position was based on governmental interests in discipline and morale which apply as equally to declamations as to deeds; and that the constitutional analysis, *see also Beller v. Middendorf,* 632 F.2d 788, 806 (9th Cir.1980), *cert. denied,* 452 U.S. 905, 101 S.Ct. 3030, 69 L.Ed.2d 405 (1981) (plaintiff Beller), 454 U.S. 855, 102 S.Ct. 304, 70 L.Ed.2d 150 (1981) (plaintiff Miller) on conflicting individual and governmental interests is applicable in the instant case.

The trial judge added that "[t]he most that can be said in this case is that the admissions of the plaintiff were an inadequate basis for finding him guilty of deliberate falsification in his denial of homosexuality and homosexual conduct in the enlistment process," 516 F.Supp. at 628, but

that this would not afford any basis for relief. If the Chapter 14 fraudulent enlistment discharge was not valid, plaintiff would immediately be subject to discharge under Chapter 13 for unsuitability in any event so that plaintiff was entitled to no relief.

On appeal, plaintiff urges numerous interrelated grounds for reversal, making five general arguments: (1) the Army did not follow its own regulations in discharging him; (2) the discharge procedures did not comport with procedural due process; (3) the discharge violated his substantive due process rights; (4) the discharge violated his constitutional right to privacy and his rights under the First Amendment; and (5) the discharge violated his rights under the equal protection component of the Fifth Amendment.

## II

### THE FRAUDULENT ENTRY ISSUE

Plaintiff argues that the Army did not follow its own regulations in discharging him for fraudulent entry.

 Army regulations define fraudulent entry as procuring "an enlistment, induction or other active service through any deliberate material misrepresentation, omission or concealment which, if known, might have resulted in rejection." Army Reg 635–200 ch. 14 ¶ 14–5 (1973). Sexual perversion is a non-waivable moral and administrative disqualification. Defendants' Exhibit AA; Army Reg. 601–210 (Appendix A) (1975).[1] The district court found that

---

1. The Army has the authority to promulgate such regulations. The composition and qualifications of the armed forces is a matter for Congress and the military. *E.g., Lindenau v. Alexander,* 663 F.2d 68, 73 (10th Cir.1981). The Secretary has broad discretion to promulgate regulations regarding eligibility for military service. *See* 10 U.S.C. § 505(a) (Secretary may accept original enlistments of "qualified, effective, and able-bodied persons."); 10 U.S.C. § 508(b) (discharged persons may reenlist "under such regulations as the Secretary concerned may prescribe"); 10 U.S.C. § 1169 (no enlisted person may be discharged before expiration of term of service, except as prescribed by the Secretary); 10 U.S.C. § 3012(g) ("The Secretary

may prescribe regulations to carry out his functions, powers, and duties under this title."). These sections provide sufficient statutory authority for the Secretary to prescribe regulations which make homosexuals ineligible for military service, and which permit the discharge of individuals who have concealed their homosexuality in the enlistment process.

Plaintiff argues that neither Article 125, 10 U.S.C. § 925 (unnatural carnal copulation with another of the same or opposite sex shall be punished as a court-martial may direct), nor Article 134, 10 U.S.C. § 934 (discords and neglects to prejudice of military order and discipline not specifically mentioned in this chapter

this was the justification for requiring applicants to deny homosexuality and homosexual acts in the application process. 516 F.Supp. at 626. Moreover, homosexuality is grounds to discharge an individual for unsuitability. Army Reg. 635–200 ch. 13 ¶ 13–4(d); Defendants' Exhibit FF. Therefore, we hold that concealing or failing to disclose homosexuality in the enlistment process is material, and one doing so may be discharged for fraudulent enlistment.

Plaintiff denied homosexuality on two occasions in the enlistment process.[2] Despite plaintiff's numerous admissions of homosexuality, he contends that dismissal for fraudulent entry was inappropriate. He argues that his denials of homosexuality were truthful because he did not know that he was a homosexual at the time he enlisted. Not until after enlistment did his sexual identity crystallize so that he realized that he was a homosexual.

 In concluding that plaintiff's denials of homosexuality in the enlistment process were not truthful, General Dirks relied on plaintiff's admissions of homosexuality. While on active duty, plaintiff admitted that he was "gay" or a homosexual on at least six occasions. On one such occasion, he did so in the presence of patients and staff. Defendants' Exhibit J, at 3. Like the trial court, we believe that this was sufficient for General Dirks to conclude that plaintiff was homosexual before enlisting. We cannot say that such a conclusion is arbitrary and capricious or unsupported by substantial evidence.[3] Accordingly, we hold that the Army did follow its own regulations in discharging plaintiff.[4]

---

shall be punished at discretion of the court) can be "the basis of the non-waivable rule of the Army excluding homosexuals." Appellant's Brief at 19–21. The validity of these code sections is not at issue. Sections 925 and 934 permit punishment for particular acts. No punishment is involved in this case. As the above discussion illustrates, the Secretary has the statutory authority to decide that certain attributes make one ineligible for military service. Plaintiff was merely given an honorable discharge when it was learned that he concealed a disqualifying attribute in the enlistment process. The validity of §§ 925 and 934 is irrelevant to this determination.

2. Plaintiff responded in the negative to the question, "Have you ever engaged in homosexual activity (sexual relations with another person of the same sex)?" Defendants' Exhibit C at 113. In addition on a medical questionnaire plaintiff wrote "denies drug abuse, alcoholism, homosexuality." Defendants' Exhibit B.

3. In reviewing a case in which a serviceman was discharged because he was convicted of a criminal offense by civil authorities, we have said the "question is whether or not the action ... was arbitrary or capricious or unsupported by substantial evidence." *Kalista v. Secretary of Navy,* No. 83–1531, slip op. at 4 (10th Cir. March 15, 1984) (unpublished); *see also Karlin v. Reed,* 584 F.2d 365, 367–68 (10th Cir.1978).

We have considered the defendant's argument that plaintiff's claims are not justiciable or reviewable. Brief for Appellees 60–65. They rely on the Fifth Circuit's *Mindes* doctrine, *Mindes v. Seaman,* 453 F.2d 197 (5th Cir.1971), as explicated in *Lindenau v. Alexander,* 663 F.2d 68 (10th Cir.1981). In *Lindenau* we explained that a court is first to determine whether the case involves an alleged violation of a constitutional right, statute or regulation and whether intraservice remedies have been exhausted. If so there are four factors to consider when determining whether a military matter is justiciable. They are: (1) the nature and strength of the challenge to the military determination; (2) the potential injury if review is refused; (3) the type and degree of anticipated interference with the military function; and (4) the extent to which military discretion or expertise is involved in the challenged decision. *Lindenau v. Alexander, supra,* 663 F.2d at 71. We conclude that the case at bar is justiciable. In view of court cases in which homosexuals in the military have been successful in asserting constitutional claims, *see, e.g., Matthews v. Marsh,* No. 82–0216 (D.Me. April 3, 1984), appeal docketed, No. 84–1482 (1st Cir. June 15, 1984); *benShalom v. Secretary of Army,* 489 F.Supp. 964 (E.D.Wis.1980), and the substance of violation of Army regulations, we conclude that the claims of plaintiff are of sufficient substance that this case is justiciable.

4. Plaintiff also argues that the Army was required to view homosexuality as a medical defect, and that concealing a medical defect is not cause for discharge as fraudulent entry. Army Reg. 635–200 ch. 14 ¶ 14–5(e); Exhibit V, at 3. In addition, plaintiff argues that General Dirks did not observe the "completely verified and proven" evidentiary requirement of Chapter 14. Army Reg. 635–200 ch. 14, ¶ 14–12; Exhibit V, at 7. The district judge rejected both arguments and we are persuaded that this ruling was correct.

The district judge reasoned that the argument that the Army must consider homosexuality as a medical defect is "sophistry" because homosexu-

## III

### THE CONSTITUTIONAL CLAIMS

#### Procedural due process

When discharging an individual for fraudulent entry, Army regulations do not require a hearing if the individual is to receive an honorable discharge. Plaintiff was honorably discharged without a hearing. He argues that this does not comport with procedural due process.

The requirements of procedural due process apply only to the deprivation of interests encompassed by the due process protection of liberty and property. *See, e.g., Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann,* 408 U.S. 593, 599, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570 (1972); *see generally* Simon, *Liberty and Property in the Supreme Court: A Defense of* Roth *and* Perry, 71 Calif.L.Rev. 146 (1983). Plaintiff can show neither such interest. Accordingly, procedural due process was not offended by failing to provide plaintiff with a hearing before discharge.

Plaintiff has no property right to continued military service. A property right does not stem from an individual's "abstract need or desire" for continued employment. Rather it grows out of a "legitimate claim of entitlement to it." *Roth, supra,* 408 U.S. at 577, 92 S.Ct. at 2709; *see also Asbill v. Housing Authority of Choctaw Nation,* 726 F.2d 1499, 1501 (10th Cir.1984). The Secretary has the authority to prescribe regulations under which Army personnel can be discharged. *See* 10 U.S.C. § 1169(1). We have held that the Army complied with its regulations in discharging plaintiff. Accordingly, plaintiff had no property interest in the continuance of his Army career. *See, e.g., Knehans v. Alexander,* 566 F.2d 312, 314 (D.C.Cir. 1977), *cert. denied,* 435 U.S. 995, 98 S.Ct. 1646, 56 L.Ed.2d 83 (1978); *Ampleman v. Schlesinger,* 534 F.2d 825, 827–29 (8th Cir. 1976); *Sims v. Fox,* 505 F.2d 857, 860–62 (5th Cir.1974), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 678 (1975); *ben-Shalom v. Secretary of Army,* 489 F.Supp. 964, 971–72 (E.D.Wis.1980); *cf. Lindenau v. Alexander,* 663 F.2d 68, 72 (10th Cir.1981) ("well established that there is no right to enlist in this country's armed services").

Even if a property right does not exist, a liberty interest may nevertheless be present so that procedural due process would require a hearing. Plaintiff does not persuasively explain how a protected liberty interest of his has been violated. He essentially argues that the Army's dissemination of information regarding his discharge has injured him in two respects. First, he says that the Colorado Department of Employment denied him unemployment benefits because the Army released a document to that Department indicating that he was discharged for fraudulent enlistment, and stating that he cannot reenlist. Second, he was unable to obtain civilian employment on several occasions because of his discharge.[5] *See* Appellant's Brief at 15, 24; Appellant's Reply Brief at 3–4.

We have recognized that the concept of liberty safeguards two interests (1) the protection of one's good name, reputation, honor and integrity; and (2) one's freedom to

---

ality is not defined as a medical defect within the meaning of Paragraph 14–5(e). Army Reg. 635–200 ch. 14 ¶ 14–5(e); *see* 516 F.Supp. at 627. He also concluded that General Dirks did not fail "to make certain that the fact of fraudulent enlistment was completely verified and proven." 516 F.Supp. at 627. He reasoned that General Dirks relied on plaintiff's own admissions of pre-service homosexuality, and that this was sufficient to support the conclusion that there was deception in the enlistment process. *Id.* at 627–28.

**5.** It appears that plaintiff also argues that he has a liberty interest by virtue of his honorable discharge from the Army. This argument has no merit. No liberty interest is impinged "by the mere fact of his honorable discharge and non retention in the Army." *Knehans v. Alexander,* 566 F.2d 312, 314 (D.C.Cir.1977), *cert. denied,* 435 U.S. 995, 98 S.Ct. 1646, 56 L.Ed.2d 83 (1978); *see also Beller, supra,* 632 F.2d at 806.

take advantage of other employment opportunities. *E.g., Miller v. City of Mission,* 705 F.2d 368, 373 (10th Cir.1983); *see also Roth, supra,* 408 U.S. at 573–74, 92 S.Ct. at 2707–2708. The manner in which one is terminated may be a deprivation of one or both of these interests. *E.g., Miller, supra,* 705 F.2d at 373. We have held that "for an employee to make a successful liberty deprivation claim [the employee] must show that [the] dismissal resulted in the *publication* of information which was *false* and *stigmatizing.*" *Asbill, supra,* 726 F.2d at 1503 (footnotes omitted) (emphasis in original).

■ Plaintiff has not shown any infringement of a protected liberty interest. First, the plaintiff himself publicized his homosexuality and the circumstances of his discharge. To impinge on a liberty interest, the stigmatizing information must be made public by the offending governmental entity. *See Gentile v. Wallen,* 562 F.2d 193, 197 (2d Cir.1977); *cf. Bishop v. Wood,* 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976) (since communication not made public, it cannot properly form the basis for a claim that petitioner's liberty interest was impaired). Second, to the extent that the Army publicized any information to the public or the State of Colorado, it was at the behest of plaintiff. Plaintiff consented to the release of such material.[6] After inducing the Army to release information, plaintiff cannot now claim that this impaired a liberty interest. *See Marwill v. Baker,* 499 F.Supp. 560, 579 (E.D. Mich.1980) (no liberty interest impaired where "no indication that any memos, reports or communications were made public except by the plaintiff himself or in response to plaintiff's assertions in his pursuit of his appellate rights and this law suit").

### Substantive due process

■ Plaintiff also argues that his discharge violates his rights to substantive due process. He reasons that his military record was excellent and that there was no showing of a nexus between homosexuality and unsuitability for the Army. Appellant's Brief at 25–29. The district court rejected this argument for the reasons articulated in *Beller v. Middendorf,* 632 F.2d 788 (9th Cir.1980), *cert. denied,* 452 U.S. 905, 101 S.Ct. 3030, 69 L.Ed.2d 405 (1981) (plaintiff Beller), 454 U.S. 855 (1981) (plaintiff Miller). We are also persuaded by *Beller,*[7] and we hold that plaintiff's dis-

---

**6.** Plaintiff signed two consent forms for the release of information. The first provided

 I, ROGER W. RICH, hereby give my permission to the Department of the Army, Fitzsimons Army Medical Center, to release information to the public (i.e. the news media) concerning the pending administrative action against me.
 Defendant's Exhibit II.
 The second provided
 I agree to the request by the Colorado Division of Employment for information from my former federal employing agency, which is required by law in connection with my claim for unemployment compensation, and consent to the furnishing of the requested information by my former federal employing agency irrespective of whether the Privacy Act of 1974 (5 U.S.C. 552 A) would preclude the release of the information without my consent.
 Plaintiff's Exhibit 4a, at 2.

**7.** In *Beller* the Ninth Circuit sustained the discharge of homosexuals from the Navy against a substantive due process challenge. The court recognized that there is a significant split of authority as to whether some private consensual homosexual behavior may have constitutional protection. The court conceded, *arguendo,* that some kinds of government regulation of such conduct would face substantial constitutional challenge. 632 F.2d at 810. Nevertheless, the court held that the Navy could discharge individuals for homosexuality. The nature of the employer was "crucial" to the court's decision. Because the military by necessity must be a specialized society separate from civilian life, its interests outweighed whatever "heightened solicitude" was appropriate for consensual private homosexual conduct. *Beller, supra,* 632 F.2d at 810–11.

 In the instant case, the Army offered numerous justifications for its policy of not permitting homosexuals to enlist. Among other things, evidence from defense witnesses was offered to show that homosexuals in the service would ·be detrimental to good order, discipline, morale and military effectiveness because: (1) servicemen must live closely together, and forcing heterosexuals to live and work with homosexuals would produce friction; (2) permitting homosexuals in the military would decrease its pres-

charge did not violate his substantive due process rights.

### The right to privacy

Plaintiff vigorously contends that the regulations impinge on his constitutional right to privacy because they intrude into fundamental matters at the core of one's personality, self image, and sexual identity. Appellant's Brief at 30–31.

At the outset, we must make clear that it is unnecessary for us to decide whether there is any constitutional protection for private consensual homosexual conduct among adults.[8] Even if we assume, *arguendo*, that the constitutional right of privacy protects some private consensual homosexual activity among adults, it does not follow that the Army could not exclude homosexuals. "The government has a compelling interest in maintaining a strong military force," and if the Army were unable to exclude homosexuals it would "severely compromise the govern-

ment's ability to maintain such a force." *Hatheway v. Secretary of Army,* 641 F.2d 1376, 1382 (9th Cir.), *cert. denied,* 454 U.S. 864, 102 S.Ct. 324, 70 L.Ed.2d 164 (1981). Therefore, we hold that even if privacy interests were implicated in this case, they are outweighed by the Government's interest in preventing armed service members from engaging in homosexual conduct. *See id.* at 1384 (holding *inter alia* that dishonorable discharge for engaging in homosexual acts did not violate serviceman's right to personal autonomy).

### The First Amendment

Plaintiff argues that the implicit prohibitions of the Army regulations at issue infringe upon his First Amendment right to meet with homosexuals and to discuss problems or advocate changes in the status quo. We do not believe that permitting the Army to discharge plaintiff violated his First Amendment rights. We reach this conclusion for two reasons.

tige and image resulting in an adverse impact on recruiting. In our view, these justifications are sufficient to sustain the Army's policy against a substantive due process attack. *Cf. Vigil v. Post Office Department of United States,* 406 F.2d 921 (10th Cir.1969) (dismissal of Post Office employee for homosexual acts upheld).

Plaintiff further says that in considering his substantive due process claim, the courts must proceed with a case-by-case scrutiny and consider the distinguishing facts of plaintiff's case. *See* Appellant's Brief at 29. We disagree. As *Beller* explained, "[w]hile the substantive due process test we describe in the text does proceed on a case-by-case basis, it does not necessarily require the Government in each case involving changing norms to show that the reasons for the regulation apply in the particular case." *Beller, supra,* 632 F.2d at 808 n. 20.

**8.** Whether some private consensual homosexual activity is constitutionally protected appears to be an unsettled question. The Supreme Court has summarily affirmed a three-judge district court judgment which declined to grant declaratory or injunctive relief to bar enforcement or threatened enforcement of a sodomy statute against male homosexual activity, *Doe v. Commonwealth's Attorney,* 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 (1976), *aff'g,* 403 F.Supp. 1199 (E.D.Va.1975) (three judge court). After *Doe,* however, a majority of the Court agreed with the proposition that "the Court has not

definitively answered the difficult question whether and to what extent the Constitution prohibits state statutes regulating [private consensual sexual] behavior among adults, and we do not purport to answer that question now." *Carey v. Population Services,* 431 U.S. 678, 688 n. 5, 97 S.Ct. 2010, 2018 n. 5, 52 L.Ed.2d 675 (1977) (brackets in original).

Since *Doe,* the authorities have not been in agreement as to whether some private consensual homosexual activity may be constitutionally protected. *Compare DeSantis v. Pacific Telephone & Telegraph Co.,* 608 F.2d 327 (9th Cir. 1979) ("courts have not designated homosexuals as 'suspect' or 'quasi-suspect' classification so as to require more exacting scrutiny" under 42 U.S.C. § 1985(3)) *and Lovisi v. Slayton,* 539 F.2d 349, 352 (4th Cir.1976) (en banc) (addendum added after Supreme Court affirmed *Doe*) (*Doe* "necessarily confined the constitutionally protected right of privacy to heterosexual conduct."), *cert. denied,* 429 U.S. 977, 97 S.Ct. 485, 50 L.Ed.2d 585 (1976) *with Baker v. Wade,* 553 F.Supp. 1121 (N.D.Tex.1982) (developments after *Doe* demonstrate its limited precedential value and Texas statute prohibiting homosexual sodomy violates fundamental right to privacy), appeal docketed, No. 82–1590 (5th Cir. Nov. 4, 1982), *and New York v. Onofre,* 51 N.Y.2d 476, 434 N.Y.S.2d 947, 415 N.E.2d 936 (1980) (sodomy statute unconstitutional as applied to consenting male homosexuals), *cert. denied,* 451 U.S. 987, 101 S.Ct. 2323, 68 L.Ed.2d 845 (1981).

First, this is not a case where any First Amendment rights were directly curtailed. The Amendment does, of course, stand as a bulwark of protection for rights of expression and association. *E.g., Rampey v. Allen,* 501 F.2d 1090, 1097 (10th Cir.1974) (en banc), *cert. denied,* 420 U.S. 908, 95 S.Ct. 827, 42 L.Ed.2d 838 (1975). However, plaintiff was not discharged for advocating homosexuality or merely associating with homosexuals. Rather the Army discharged him because during enlistment he falsely denied having engaged in homosexual activity.

 Second, any incidental effect that the Army policy of excluding homosexuals has on First Amendment rights is justified by the special needs of the military. To insure that the armed services are always capable of performing their mission, the military " 'must insist upon a respect for duty and a discipline without counterpart in civilian life.' " *Brown v. Glines,* 444 U.S. 348, 354, 100 S.Ct. 594, 599, 62 L.Ed.2d 540 (1980) (quoting *Schlesinger v. Councilman,* 420 U.S. 738, 757, 95 S.Ct. 1300, 1312, 43 L.Ed.2d 591 (1975)). Although members of the military are not excluded from protection by the First Amendment, the different character of the military community and its mission require "a different application of those protections. The fundamental necessity for obedience, and the consequent necessity for imposition of discipline, may render permissible within the military that which would be constitutionally impermissible outside it." *Parker v. Levy,* 417 U.S. 733, 758, 94 S.Ct. 2547, 2563, 41 L.Ed.2d 439 (1974). Thus the special needs of the military make the restrictions involved permissible. *But cf. Matthews v. Marsh,* No. 82–0216 (D.Me. April 3, 1984) (where no homosexual activity is shown, excluding person from R.O.T.C. program because she stated that she was a homosexual violated First Amendment), appeal docketed, No. 84–1482 (1st Cir. June 15, 1984).

*Equal protection*

Plaintiff contends that the Army's policy of excluding homosexuals violates his rights under the equal protection component of the Fifth Amendment due process clause because homosexuality is an immutable characteristic which must be evaluated under the strict scrutiny standard of review. Furthermore plaintiff says that even if we do not agree that homosexuality is a suspect classification, there is nevertheless an equal protection violation because the Army has not met its burden of justifying discrimination against homosexuals.

 We cannot agree. A classification based on one's choice of sexual partners is not suspect. *E.g., National Gay Task Force v. Board of Education,* 729 F.2d 1270, 1273 (10th Cir.1984); *see also Hatheway v. Secretary of Army,* 641 F.2d 1376, 1382 (9th Cir.1981), *cert. denied,* 454 U.S. 864, 102 S.Ct. 324, 70 L.Ed.2d 164 (1981); *DeSantis v. Pacific Telephone & Telegraph Co.,* 608 F.2d 327 (9th Cir.1979). And even if heightened scrutiny were required in reviewing the Army Regulations because they restrict a fundamental right, *see, e.g., Memorial Hospital v. Maricopa County,* 415 U.S. 250, 254, 262, 94 S.Ct. 1076, 1080, 1084, 39 L.Ed.2d 306 (1974); *Shapiro v. Thompson,* 394 U.S. 618, 634, 89 S.Ct. 1322, 1331, 22 L.Ed.2d 600 (1969); *Hatheway v. Secretary of Army, supra,* 641 F.2d at 1382 n. 6 (9th Cir.1981),[9] the classification is valid in light of the Army's demonstration of a compelling governmental interest in maintaining the discipline and morale of the armed forces. *Hatheway, supra,* 641 F.2d at 1382; *Beller, supra,* 632 F.2d at 810. Thus, we cannot sustain the plaintiff's equal protection claim.

## IV

We have considered plaintiff-appellant's remaining contentions and conclude that

---

**9.** *See also Fitz v. Dolyak,* 712 F.2d 330, 332 (8th Cir.1983) (legislation at issue involves neither suspect class nor fundamental right; hence strict scrutiny not necessary). *Seoane v. Ortho*

*Pharmaceuticals, Inc.,* 660 F.2d 146, 149 (5th Cir.1981) (strict scrutiny reserved for matters involving suspect classifications and categorizations impinging on fundamental rights).

they are without merit. For the reasons we have given we are not persuaded by plaintiff-appellant's arguments to hold that the district court erred. Accordingly the judgment is

AFFIRMED.