KYAN, Judge
(dissenting):
“Courts created by statute can have no jurisdiction but such as the statute confers.” Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 818, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (quoting Sheldon v. Sill, 49 U.S. 441, 449, 8 How. 441, 12 L.Ed. 1147 (1850)). There is no statutory basis for jurisdiction in this Court in this case: The petitioner is a civilian, lawfully discharged from military service pursuant to a court-martial conviction. And the case has been final, for purposes of both Articles 71 and 76, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 871, 876 (2005), for seven years. Indeed, the statutory limits of this Court’s jurisdiction are precisely to the contrary. See Articles 2, 3, 66, 67, 73, and 76, UCMJ, 10 U.S.C. §§ 802, 803, 866, 867, 873, 876 (2005).
Although we have no jurisdiction over Denedo and final cases fall outside our statutory mandate, the majority nonetheless concludes today that this Court has jurisdiction. This is perplexing. In addition to being contrary to the statutory scheme, this Court’s assertion of jurisdiction flies in the face of Supreme Court precedent, the decisions of at least two federal circuit courts of appeal, and the position, for the past fifty-seven years, of the solicitors general of the United States as agents of the President, commander in chief of the armed forces. See Solorio v. United States, 483 U.S. 435, 439-40, 107 S.Ct. 2924, 97 L.Ed.2d 364 (1987) (recognizing that military jurisdiction is tied to military status, i.e., U.S. Const, art. I, § 8, cl. 14 — a person within the “land and naval Forces”); United States ex rel. Toth v. Quarles, 350 U.S. 11, 14-15, 76 S.Ct. 1,100 L.Ed. 8 (1955) (holding that Article I military jurisdiction could not be “extended to civilian ex-soldiers who had severed all relationship with the military and its institutions”); Gusik v. Schilder, 340 U.S. 128, 132, 71 S.Ct. 149, 95 L.Ed. 146 (1950) (interpreting the predecessor to Article 76— Article 53 of the Articles of War, 62 Stat. 639, 10 U.S.C. § 1525 (1950) — and concluding that finality “descríbeles] the terminal point for proceedings within the court-martial system”); see also Witham v. United States, 355 F.3d 501, 505 (6th Cir.2004) (stating that “neither the Uniform Code of Military Justice nor the Manual for Courts-Martial provides for collateral review within the military courts”); Gilliam v. Bureau of Prisons, 208 F.3d 217, 2000 WL 2684919, at *2 (8th Cir. 2000) (“Unlike the practice in the United States Circuit Courts of Appeal and District Courts, neither the UCMJ ... nor the Manual for Courts-Martial ... provides procedures for collateral, post-conviction attacks on guilty verdicts.”) (quoting United States v. Murphy, 50 M.J. 4, 5 (C.A.A.F.1998) (quotation marks omitted)); Brief for Petitioners on the Jurisdictional Issues at 7, Schlesinger v. Councilman, 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975) (No. 73-662) (stating that the legislative history of Article 76, *134 UCMJ shows that Article III court collateral review was expected to be “the sole exception to the finality of actions within the military court system”); Brief for Respondent at 3-4, Gusik, 340 U.S. 128, 71 S.Ct. 149, 95 L.Ed. 146 (No. 110) (stating that the exception to finality for a motion for new trial in the Articles of War provided the sole collateral remedy within the courts-martial system). I agree with the Supreme Court, the Sixth and Eighth Circuits, the solicitors general, and the Government’s position in this case: we have no jurisdiction over a discharged civilian’s case that is final under Article 76, UCMJ.
The majority conclusorily asserts that it has jurisdiction, grounded in the fact that Denedo was once in the military, and his case once fell within the statutory jurisdiction of the military justice system. See Denedo v. United States, 66 M.J. 114, 120 (C.A.A.F. 2008) (“The existing statutory jurisdiction of the Navy-Marine Corps Court of Criminal Appeals includes cases such as Appellant’s, in which the sentence extends to a punitive discharge.”). It does not explain how jurisdiction follows in this case. As the Supreme Court reminded this Court not so very long ago, we are “not given authority, by the All Writs Act [28 U.S.C. § 1651(a) (2000)] or otherwise, to oversee all matters arguably related to military justice, or to act as a plenary administrator even of criminal judgments [we have] affirmed.” Clinton v. Goldsmith, 526 U.S. 529, 536, 119 S.Ct. 1538, 143 L.Ed.2d 720 (1999).
It is unclear to me why the Court charts this course today. Denedo’s claim ineffective assistance of counsel, based on newly discovered evidence, after his ease is final under Article 76, UCMJ — would be cognizable immediately in federal court but for this Court’s refusal to state that it lacks jurisdiction. Massaro v. United States, 538 U.S. 500, 504, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003) (stating that ineffective assistance may be raised on collateral review irrespective of whether petition could have raised it on direct appeal); Dobbs v. Zant, 506 U.S. 357, 358-60,113 S.Ct. 835,122 L.Ed.2d 103 (1993) (holding that courts should consider newly discovered evidence regarding ineffective assistance of counsel on collateral review). I do not question that the military justice system can fairly assess Denedo’s claim. But the majority’s suggestion that the military system is somehow better able to assess his claim in this case, a fact-bound question involving a civilian and a civilian attorney and grounded in part in assessment of immigration law, is unfounded.
1. Absent Jurisdiction No Writ May Issue
The Court provides relief today by remanding the case for additional action by the Court of Criminal Appeals (CCA), in reliance on the All Writs Act. But in the absence of jurisdiction, a writ may not issue. Marbury v. Madison, 1 Cranch 137, 5 U.S. 137, 173, 2 L.Ed. 60 (1803). Most recently the Supreme Court reaffirmed this longstanding principle as it relates to the jurisdiction of this Court, stating that, “the express terms of the [All Writs] Act confine the power of the CAAF to issuing process ‘in aid of its existing statutory jurisdiction; the Act does not enlarge that jurisdiction.” Goldsmith, 526 U.S. at 534-35, 119 S.Ct. 1538. The All Writs Act is a mechanism for exercising power a court already has. The starting point of the analysis must always be whether a court has jurisdiction before proceeding to the question whether a writ should issue. See 28 U.S.C. § 1651(a) (2000).
This Court, as a legislatively created Article I court, is a court of limited jurisdiction. Our limited powers are defined entirely by statute. See generally Articles 2-3, 66-76, UCMJ, 10 U.S.C. §§ 802-03, 866-76 (2005). Despite the majority’s holding to the contrary, under those Articles no jurisdiction exists in this case.
A. This Court Does Not Have Jurisdiction Over Discharged Civilians Who Have Severed Their Connection With the Military
Article I, § 8, cl. 14 of the U.S. Constitution empowers Congress “[t]o make Rules for the Government and Regulation of the land and naval Forces.” Articles 2 and 3, UCMJ, reflect the considered judgment of Congress as to those classes of persons who fall within that constitutional grant. Article 2, UCMJ, delineates jurisdiction over “[p]er- *135 sons subject to this chapter.” Persons discharged from the armed forces, other than retired members under Article 2(a)(4) and (5), UCMJ, or persons in custody of the armed forces serving a sentence imposed by court-martial under Article 2(a)(7), UCMJ, are not included within Article 2, UCMJ. Article 3, UCMJ, entitled “[Jurisdiction to try certain personnel,” sets forth, inter alia, the limited circumstance in which a discharged servicemember is not relieved from military jurisdiction: a person charged with fraudulently obtaining his discharge or who has deserted.[1] Article 3(b) and (c), UCMJ. Articles 2 and 3, UCMJ, are consonant with the considered view that the military justice system does not have jurisdiction over civilians, and that there is a military community, a civilian community, and “no third class which is part civil and part military.” William Winthrop, Military Law and Precedents 106 (2d. ed.1920).
The Supreme Court has not hesitated to invalidate any efforts by Congress or the military to sweep civilians unattached to a military unit within the jurisdiction of the military justice system. See, e.g., McElroy v. United States ex rel Guagliardo, 361 U.S. 281, 284-87, 80 S.Ct. 305, 4 L.Ed.2d 282 (1960) (holding that a provision of the UCMJ extending jurisdiction to persons accompanying the armed forces outside the continental limits of the United States could not be constitutionally applied to civilian employees in time of peace); Reid v. Covert, 354 U.S. 1, 30-35, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957) (invalidating the same provision as applied to civilian dependents of members of the armed forces in time of peace); Toth, 350 U.S. at 14, 76 S.Ct. 1 (recognizing that Article I military jurisdiction could not be “extended to civilian ex-soldiers who had severed all relationship with the military and its institutions”). I fear that today the majority invites the Supreme Court to issue another decision reaffirming the holdings of this line of eases.
B. Denedo is a Civilian Who Has Severed All Relationship With the Military
Denedo is a former servicemember lawfully discharged from military service pursuant to a court-martial conviction. He has no current relationship with the military — at least no more of a relationship than any other civilian who was formerly in the military might have if he had filed a writ of coram nobis here — which is to say, no legally cognizable relationship with the military justice system under the UCMJ.
The majority acknowledges that Denedo was discharged from the Navy on May 30, 2000. On that day, the bad-conduct discharge adjudged at his court martial and approved by the convening authority was effective, and Denedo was a civilian, completely detached from the military and the military justice system. And, as stated above, Article 2, UCMJ does not provide jurisdiction over military personnel who have been discharged from the military service and have no remaining connection to the military. Toth, 350 U.S. at 14, 76 S.Ct. 1 (“[i]t has never been intimated by [the Supreme] Court ... that Article I military jurisdiction could be extended to civilian ex-soldiers who had severed all relationship with the military and its institutions”). It is contrary to the limited nature of a legislatively created Article I court to exercise jurisdiction over a person not specifically prescribed by statute. The majority opinion fails to explain how we have jurisdiction over Denedo, given his discharge.
C. Collateral Review is Outside Article 67, UCMJ
Article 67, UCMJ, provides jurisdiction for this Court to “review the record” in specified cases reviewed by the CCA. The fact that Denedo’s case was such a ease is a truism that provides no legal authority or logical support for collateral review now that his case is final. The majority’s reasoning from true premises to unrelated conclusions without statutory or other authority is unsound.
Moreover, it is not at all clear how Article 66 or 67, UCMJ, supports an assertion of jurisdiction to conduct collateral review. The CCAs have jurisdiction to act on “the findings and sentence as approved by the convening authority.” Article 66(c), UCMJ. In *136 undertaking this review, a CCA may only affirm such parts of the findings and sentence “as it finds correct in law and fact and determines, on the basis of the entire record, should be approved.” Id. While reasonable minds may differ as to what is included in “the record,” matters that have not been reviewed by the convening authority are not part of the record of trial, and therefore are unreviewable by the CCA or this Court. See United States v. Beatty, 64 M.J. 456, 458 (C.A.A.F.2007) (discussing what constitutes the “entire record” for purposes of Article 66(c), UCMJ, review).
Articles 66 and 67, UCMJ are statutes governing direct review of courts-martial[2] because the jurisdictional grants under Articles 66 and 67, UCMJ are tied to “the record.” See Beatty, 64 M.J. at 458. It is not surprising that collateral review is not provided for within those statutes. Collateral review most often requires, by its terms, development and consideration of something outside “the record.” See Parke v. Raley, 506 U.S. 20, 30, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992) (citing Black’s Law Dictionary 261 (6th ed.1990)); see also John McKee VanFleet, The Law of Collateral Attack on Judicial Proceedings 5-6 (1892) (defining a collateral attack).
In those instances where cases on direct review require additional fact finding, we have an unwieldy and imperfect system in place to facilitate inclusion of those facts in the record: new factual matters must be developed at a court-martial, revisited by the convening authority, and “included” in the record for review.[3] United States v. DuBay, 17 C.M.A. 147, 149; 37 C.M.R. 411, 413 (1967). Additional awkward constructs were created to determine the threshold question whether additional facts were needed. United States v. Ginn, 47 M.J. 236, 248 (C.A.A.F. 1997). But the fact that these procedures may apply on direct review is not relevant to whether this Court has the power to employ them on collateral review. Moreover, it is untenable to suggest that jurisdiction for collateral review of final cases is clear under Articles 66 and 67, UCMJ, in instances where collateral review of the issue necessarily requires the development of facts outside the statutory grant. And this Court has no mechanism for doing so. See United States v. Walters, 45 M.J. 165, 167 (C.A.A.F.1996) (Cox, C.J., and Sentelle, J., United States Court of Appeals for the District of Columbia, sitting by designation, concurring in the result) (urging “the Joint-Service Committee on Military Justice to consider and recommend to the President a procedure by which collateral attacks on courts-martial might be litigated”).[4] There is no mention of, and thus no provision for, post-finality collateral review anywhere within Article 66 or 67, UCMJ.
D. Denedo Seeks Collateral Review
In this case Denedo filed a writ coram nobis at the CCA seeking to challenge his court-martial conviction on the grounds that his Sixth Amendment right to counsel was violated because his counsel was ineffective. Denedo alleges that his civilian counsel told him that if he pled guilty he would not be deported. He alleges.that he recently discovered that this was not true. Obviously, *137 this privileged conversation was not included in the record of trial. For Denedo to have any hope of prevailing, evidence extrinsic to the record must be developed. See Massaro, 538 U.S. at 505, 123 S.Ct. 1690 (stating the advantages of collateral review in developing the factual predicate for an ineffective assistance of counsel claim); see also DuBay, 17 C.M.A. at 149, 37 C.M.R. at 413. As the case is final, and no convening authority or court-martial has jurisdiction over a discharged servicemember, we have no mechanism for developing these extrinsic facts.[5]
II. The Effect of Finality Under Article 76, UCMJ
In addition to lacking statutory jurisdiction over a civilian’s writ seeking collateral review of a court-martial, today the Court acts on a case that has been “final” for seven years.
Denedo’s bad-conduct discharge was capable of execution on May 30, 2000, because appellate review was completed and the findings and sentence were approved, reviewed, and affirmed as required by the UCMJ. Execution of the bad-conduct discharge returned Denedo to civilian status. Completion of appellate review also meant his case was “final” for purposes of Article 76, UCMJ. See Rule for Courts-Martial (R.C.M.) 1209. As expressed in Article 76, UCMJ, this means the same proceedings, findings, and sentence Denedo complains of here are “final and conclusive” within the court-martial system, subject to specific exceptions.
Article 76, UCMJ, states that:
The appellate review of records of trial provided by this chapter, the proceedings, findings, and sentences of courts-martial as approved, reviewed, or affirmed as required by this chapter, and all dismissals and discharges carried into execution under sentences by courts-martial following approval, review, or affirmation as required by this chapter, are final and conclusive. Orders publishing the proceedings of courts-martial and all action taken pursuant to those proceedings are binding upon all departments, courts, agencies, and officers of the United States, subject only to action upon a petition for a new trial as provided in section 873 of this title (article 73) and to action by the Secretary concerned as provided in section 87k of this title (article 7k), and the authority of the President.
(emphases added).
The language of the statute suggests that once appellate review is complete, the findings and sentence are “final and conclusive,” subject only to action upon a petition for a new trial pursuant to Article 73, UCMJ, remission and suspension actions by the service secretaries, pursuant to Article 74, UCMJ, or presidential action.[6] No exception is listed for writs of coram nobis or other collateral review.
A. Finality Does Not Preclude Collateral Review by Article III Courts
It was soon recognized that applying the literal language of Article 76, UCMJ, raised constitutional concerns because it would, implicitly, conflict with the Suspension Clause. See U.S. Const, art. I, § 9, cl. 2; Schlesinger v. Councilman, 420 U.S. at 751, 95 S.Ct. 1300. Consequently the Supreme Court interpreted the finality provision to not deprive Article III courts of collateral review authority. But the Supreme Court did note that Article 76, UCMJ, “described the terminal *138 point for proceedings within the court-martial system.” Schlesinger, 420 U.S. at 750, 95 S.Ct. 1300 (quoting Gusik, 340 U.S. at 132, 71 S.Ct. 149). And no one suggests that the Court of Appeals of the Armed Forces is not part of the “court-martial system.” See Article 67, UCMJ (describing this Court’s subject-matter jurisdiction over courts-martial).
Instead of taking the Supreme Court’s opinion in Schlesinger at face value, the majority claims it supports the proposition that Article 76, UCMJ, is merely a “prudential bar” to review of final decisions. This is clearly so for an Article III court. But the majority does not recognize that there is a difference between what is “prudential” for an Article III court, and what is a statutory directive for an Article I, legislatively created court. While an Article III court may, if it wishes, step into the breach whenever constitutional justiciability requirements are satisfied, this Court is limited to acting only when our statutory grant so allows. Goldsmith, 526 U.S. at 535,119 S.Ct. 1538.
Schlesinger is not to the contrary. The statutory framework, as drafted by Congress, signed into law by the President, and interpreted by the Supreme Court, counsels that we yield to the Article III courts once we have reached the “terminal point,” as described by the finality provision in Article 76, UCMJ. That collateral review is so circumscribed is neither surprising nor unjust given the reality that, where a case is final for purposes of Article 76, UCMJ, the individual will almost certainly no longer be a servicemember.[7]
B. Ignoring the Effect of Article 76, UCMJ, Eviscerates the Statutory Scheme
The majority cites the text of Article 76, UCMJ, but avoids discussing the specific exceptions to finality listed therein. Having avoided the listed exceptions, it suggests that Article 76, UCMJ, is wholly “prudential” for both Article I and Article III courts. Given the holdings of the Supreme Court and the language of the statute, this interpretation is perplexing. The only exception to Article 76, UCMJ, finality recognized by the Supreme Court is Article III collateral review — i.e., review outside the military justice system. Schlesinger, 420 U.S. at 749, 95 S.Ct. 1300. And the only exceptions to finality contained within Article 76, UCMJ, itself are petitions for a new trial under Article 73, UCMJ, remission or suspension under Article 74, UCMJ, or presidential action.
Article 73, UCMJ, allows for collateral review within two years of convening authority action. Tellingly, this “special post-conviction remedy,” Burns v. Wilson, 346 U.S. 137, 141, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953), is vested not in this Court, but in the judge advocates general of each branch unless the case is pending before this Court or the CCA at the time the petition is made. An Article 73, UCMJ, petition for new trial, is the sole statutory provision for collateral review of final judgments by a court within our system. See Article 76, UCMJ. The decisions of at least two federal courts of appeal confirm this point, and today’s decision creates a circuit split. See Witham, 355 F.3d at 505; Gilliam, 2000 U.S.App. LEXIS 3684, at *5, 2000 WL 268491, at *2. The position of these courts is consistent with the position of the solicitors general of the United States in Gusik and Schlesinger. Brief for Petitioners on the Jurisdictional Issues at 7, Schlesinger, 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (No. 73-662); Brief for Respondent at 3-4, Gusik, 340 U.S. 128, 71 S.Ct. 149, 95 L.Ed. 146 (No. 110).
The majority opinion’s contrary interpretation ignores both the language of the statute and the statutory limitations placed on claims for a new trial. Denedo’s claim is nothing more than a petition for a new trial, dressed *139 up as a writ of coram nobis.[8] For this Court to permit a petition for a new trial to escape the statutory limitations placed upon it by Congress and allow this petition to proceed as a writ of eoram nobis eviscerates Article 73, UCMJ, and renders Article 76, UCMJ’s, finality provision meaningless. See Reiter v. Sonotone Corp., 442 U.S. 330, 339, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979) (citing United States v. Menasche, 348 U.S. 528, 538-539, 75 S.Ct. 513, 99 L.Ed. 615 (1955)) (“In construing a statute we are obliged to give effect, if possible, to every word Congress used.”).
Today’s decision is disturbing. By asserting it can act on a final ease involving a person who is not within Article 2, UCMJ, and ignoring the clear language of the statutory scheme, the Court effectively asserts that it can review any case, at any time. There is now no terminal point for this Court’s jurisdiction.
III. Clinton v. Goldsmith Redux?
The justification for today’s opinion rests on tautologies, such as “Congress enacted the UCMJ under its power to regulate the armed forces,” and “the military is an institution with distinct traditions and disciplinary concerns.” These are truisms, and thus no doubt true. Of course, it is also true that Denedo is lawfully discharged from the military and that the Constitution only grants Congress the power, vis-a-vis this Court, to “make Rules for the Government and Regulation of the land and naval Forces.” U.S. Const, art. I, § 8, cl. 14.
But the majority’s justification is troubling not so much because it is misplaced, but because it is highly reminiscent of the position of this Court prior to the Supreme Court’s decision in Clinton v. Goldsmith. At that time this Court, without statutory authority, asserted it had collateral review power over eases that were final.[9] Garrett v. Lowe, 39 M.J. 293, 295 (C.M.A.1994); Del Prado v. United States, 23 C.M.A. 132, 133-34, 48 C.M.R. 748, 749-50 (1974); United States v. Frischholz, 16 C.M.A. 150, 151-53, 36 C.M.R. 306, 307-09 (1966).
It was upon those decisions, and the analysis that underlay them, that this Court’s decision in Goldsmith rested. See, e.g., Goldsmith v. Clinton, 48 M.J. 84, 86 n. 3 (C.A.A.F.1998) (citing Frischholz, 16 C.M.A. at 151-52, 36 C.M.R. at 308 (stating that Article 67, UCMJ, does not describe the full powers of this Court; rather, the Court also possesses incidental powers as part of its responsibility under the UCMJ to protect the constitutional rights of members of the armed forces), and Gale v. United States, 17 C.M.A. 40, 42, 37 C.M.R. 304, 306 (1967) (stating that Congress intended to grant this Court “supervisory power over the administration of military justice”)). Those decisions, contrary to the well-established principle of expressly limited jurisdiction of Article I courts, were based on the notion that this Court had plenary power over the administration of military justice and all things over which it once had jurisdiction. See Goldsmith, 48 M.J. at 86-87 (stating that “Congress intended for this Court to have broad responsibility with respect to the administration of military justice”). Given that this analytic framework was expressly rejected by the Supreme Court when it reversed our *140 decision in Goldsmith, it is both significant and surprising that the majority relies upon these cases today.
When the Supreme Court overturned this Court’s Goldsmith opinion, it made it clear that this Court occupied only a small plot of the judicial landscape, and that that plot was circumscribed by statute. Goldsmith, 526 U.S. at 583-35. Inexplicably, this Court appears determined not to heed the Supreme Court’s unequivocal directive that it stay squarely within the express limits of statutory jurisdiction.[10]
IV. Denedo’s Claims Are Not Uniquely Military in Nature, and Collateral Review is Not Foreclosed in an Article III Court
Today’s decision is particularly odd given the facts of this case. The majority appears to argue that this Court must review Denedo’s case because it involves unique aspects of military justice. If we do not review, the argument goes, no one can or will. This logic is flawed, as both premises are unsound.
First, there is nothing uniquely military about this case. While this case, or any ease for that matter, can be cloaked in military justice rhetoric, this is essentially a garden variety claim of ineffective assistance of counsel, coupled with an argument regarding an immigration problem.
Denedo, who is a civilian, claims he could not have raised his Sixth Amendment claim before now. This constitutional claim is grounded in conversations that transpired between Denedo and his civilian defense counsel and the intricacies of federal immigration law. Neither this Court nor the CCA has a record of Denedo’s conversation with his civilian lawyer, special knowledge beyond that of an Article III court of the myriad ways to prove ineffective assistance under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), or any expertise with respect to immigration law. There is no colorable argument that this Court is in a better position to review this claim than an Article III court.
Nor is it correct that this Court is the sole option on collateral review if the correct standard is applied. The fact that this Court had not weighed in on Denedo’s claim would not have been dispositive of whether an Article III court would address the merits of his claim, because he claims that he only recently learned of violation of his constitutional rights, i.e., after direct review was completed. Roberts v. Callahan, 321 F.3d 994, 995 (10th Cir.2003) (citing Lips v. Commandant, United States Disciplinary Barracks, 997 F.2d 808, 811 (10th Cir.1993)) (stating that there is an exception to exhaustion and waiver requirements on collateral review when the petitioner can show actual prejudice and good cause why the petition had not been previously brought); Hatheway v. Sec’y of Army, 641 F.2d 1376, 1380 (9th Cir.1981), abrogated on other grounds by High Tech Gays v. Defense Indus. Sec. Clearance Office, 895 F.2d 563 (9th Cir.1990) (Article III courts will collaterally review a final court-martial when the military courts have not given “full and fair consideration” to the petitioner’s claim); Calley v. Callaway, 519 F.2d 184, 203 (5th Cir.1975) (“Military court-martial convictions are subject to collateral review by federal civil courts ... where ... exceptional circumstances have been presented which are so fundamentally defective as to result in a miscarriage of justice.”). A federal court may or may not determine that Denedo’s claim constitutes a serious constitutional claim warranting collateral review of a final judgment. See Matias v. United States, 923 F.2d 821, 825 (Fed.Cir.1990). But if it determines review is warranted, there is nothing to prevent its review or development of facts not resolved by military courts because they arose after the case was final and *141 the military justice system had no jurisdiction under the UCMJ.
The majority’s discussion of the collateral review exhaustion requirement ignores the point that the exhaustion problem is one that it creates today. The majority opinion relies on four federal district court eases for the proposition that an Article III Court will not entertain Denedo’s writ. Tatum v. United States, No. RDB-06-2307, 2007 U.S. Dist. LEXIS 61947, at *12-*13, 2007 WL 2316275 at *7 (D.Md. Aug. 7, 2007); Fricke v. Sec’ y of the Navy, No. 03-3412-RDR, 2006 U.S. Dist. LEXIS 36548, at *9-*14, 2006 WL 1580979 at *2-*5 (D.Kan. June 5, 2006); MacLean v. United States, No. 02-CV-2250-K, 2003 U.S. Dist. LEXIS 27219, at *13-*15 (S.D. Cal. June 6, 2003); Parker v. Tillery, No. 95-3342-RDR, 1998 U.S. Dist. LEXIS 8399, at *3-*5, 1998 WL 295574 at *l-*2 (D.Kan. May 22, 1998). But none of those cases addresses evidence discovered after the petitioner’s case was final, and each assumes that the petitioner could have brought an extraordinary writ in the military justice system. If this Court had held that no jurisdiction exists over either a civilian with no relationship to the military or a case once it is final under Article 76, UCMJ, Denedo would have been able to file his claim in an Article III court without fear of a dismissal based on exhaustion.
V. Conclusion
There is no question that Congress intended this Court to be the final court of review within the military justice system and to review those cases and matters it placed within our limited grant of jurisdiction. Those judgments are entitled to deference by the Article III Courts, which generally will not conduct de novo review of claims we have considered or permit collateral review of questions of fact we resolved. United States ex rel. New v. Rumsfeld, 448 F.3d 403, 409 (D.C.Cir.2006); Witham, 355 F.3d at 505; McElhaney v. Erker, 98 Fed.Appx. 417, 418 (6th Cir.2004); Roberts, 321 F.3d at 995; Brosius v. Warden, 278 F.3d 239, 245 (3d Cir.2002); Matias, 923 F.2d. at 826; Hatheway, 641 F.2d at 1379; Allen v. VanCantfort, 436 F.2d 625, 629 (1st Cir.1971); Harris v. Ciccone, 417 F.2d 479, 481 (8th Cir.1969); see also 129 Cong. Rec. 24, 34, 312-13 (1983).
But the statutory scheme does not permit this Court to exercise jurisdiction over a civilian’s case that is final, in derogation of Articles 2, 67, 69, 73, and 76, UCMJ, and in the absence of a specific legislative grant of authority. On the contrary, the scheme suggests that in the absence of a military remedy, a petitioner may seek relief from an Article III court. As the statutory scheme does not confer jurisdiction over a civilian who has severed all connection to the military or allow for review once a decision is final under Article 76, UCMJ, I believe the Court should dismiss Denedo’s petition, thereby allowing him to pursue his claim in an Article III court.[11] “Every extension of military jurisdiction is an encroachment on the jurisdiction of the civil courts.” Reid, 354 U.S. at 21, 77 S.Ct. 1222. Today we encroach on Article III jurisdiction without reason. I respectfully dissent.

. Article 3(a), UCMJ, relates to persons currently in a status covered by Article 2, UCMJ.

. This does not rule out jurisdiction in the limited exception recognized by the Supreme Court in Goldsmith, 526 U.S. at 536, 119 S.Ct. 1538 to “compel adherence to its own judgment.” See also United States v. United States District Court, 334 U.S. 258, 263-64, 68 S.Ct. 1035, 92 L.Ed. 1351 (1948) (discussing the power of federal courts of appeals to issue mandamus). And, as always, a court may question whether its initial judgment was void in the first instance for want of jurisdiction. United States v. Ruiz, 536 U.S. 622, 628, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002) (citing United States v. United Mine Workers, 330 U.S. 258, 291, 67 S.Ct. 677, 91 L.Ed. 884 (1947)).

. The permutations and legal gymnastics necessary to bring cases on direct review within our statutory grant in the limited circumstances where new facts must be brought within "the record” are challenging enough for any justice system.

. Chief Judge Cox's observation is relevant to this case. I note that military counsel has entered an appearance before this Court on behalf of Denedo. I question whether, under the reasoning of the majority opinion, Article 70(a) and (c), UCMJ, would require that Denedo, and all other similarly situated litigants whose cases are final, be afforded military counsel as their cases proceed.

. Even if the CCA or this Court acts on Denedo’s claims of ineffective assistance of counsel, it is unclear how that necessarily grants the relief he truly requests. He wishes to stop the deportation proceedings that stem from his conviction. But neither this Court nor the CCA has the power to prevent the Department of Homeland Security, Immigration and Customs Enforcement division, from exercising its deportation powers.

. Despite this clear statutory limitation the majority cites United States v. Davis, 63 MJ. 171, 176-77 (C.A.A.F.2006), for the proposition that [wjhen court-martial jurisdiction has been invoked properly at the time of trial, the jurisdiction of the Court of Criminal Appeals to review the case does not depend on whether a person remains in the armed forces at the time of such review. Denedo, 66 MJ. at 125. In Davis, unlike the current case, direct review had not been completed; therefore the case was not yet final. 63 MJ. at 176. Nothing in Davis or the cases cited therein serves as precedent for the concept that there is "continuing jurisdiction” over cases that are final under Article 76, UCMJ.

. That Article 76, UCMJ, is bypassed by the majority as irrelevant to jurisdiction is surprising. Two years ago this Court, in response to the Government’s argument that the Court did not have jurisdiction because a case was final, did not say that finality was irrelevant to its review. Loving v. United States, 62 M.J. 235, 240-45 (C.A.A.F.2005). Instead, it went through a lengthy analysis to explain why the case was not, in fact, final under Article 76, UCMJ, although it ultimately concluded that it need not address whether this Court has jurisdiction after a case is final. Id.

. A writ coram nobis must be directed at the court that issued the decision. Lowery v. McCaughtry, 954 F.2d 422, 423 (7th Cir.1992); see generally Abraham L. Freedman, The Writ of Error Coram Nobis, 3 Temple L.Q. 365 (1929); Note, 37 Harv. L.Rev. 744 (1924). Because we do not have standing courts, the military justice system appears ill-suited to this form of relief, as this Court recently acknowledged. See Loving, 62 M.J. at 251-55. The majoritys attempt to transmogrify the CCA into a trial court for the purpose of the analysis in this case is unfounded. The CCA is in no better position to rule on a writ coram nobis than the federal courts or we are. None were the original trial court.

. Goldsmith was a final case heard on collateral review. 526 U.S. at 532-33, 119 S.Ct. 1538. While the Supreme Court could have decided Goldsmith based on finality, that issue was not raised, and it decided the case based on an arguably more important jurisdictional theory— that this Court does not have plenary power over everyone and everything that has, at some point, touched the military justice system. Id. at 536, 119 S.Ct. 1538. Applying the logic of the Court's opinion in Goldsmith — a strict interpretation of this Court’s legislative grant of authority — to Articles 2, 67, and 76, UCMJ, yields a result opposite to the conclusion reached by the majority in this case.

. The majority’s reliance on footnote eleven of Goldsmith is misplaced. There, the Supreme Court cited, inter alia, Noyd v. Bond, 395 U.S. 683, 693-99, 89 S.Ct. 1876, 23 L.Ed.2d 631 (1969), and Burns v. Wilson, 346 U.S. at 142, 73 S.Ct. 1045, for the proposition that once a servicemember had exhausted his military remedies, final decisions of the military justice system could be collaterally reviewed under 28 U.S.C. § 2241(c) (2000), by Article III courts. In Goldsmith, the Supreme Court said nothing about collateral review of final judgments by this Court after a petitioner had exhausted the remedies outlined in Article 76, UCMJ.

. Because I conclude that the Court does not have jurisdiction, I would not reach the substantive issue in this case. I do note, however, that the majority appears to ignore the most recent precedent on the intersection of ineffective assistance of counsel and the collateral consequences of a court-martial, United States v. Miller, 63 M.J. 452 (C.A.A.F.2006), as well as precedents that are contrary to United States v. Kwan, 407 F.3d 1005 (9th Cir.2005). See Jimenez v. United States, 154 Fed.Appx. 540, 541 (7th Cir.2005); Broomes v. Ashcroft, 358 F.3d 1251, 1257 (10th Cir.2004); United States v. Gonzalez, 202 F.3d 20, 25-28 (1st Cir.2000).